**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

DENNIS JAMES BROWN,                )
                                   )
          Plaintiff,               )
                                   )
v.                                 )          Civil Action No. 3:15CV747–HEH
                                   )
LT. A. BANKS, *et al.*,            )
                                   )
          Defendants.              )

**MEMORANDUM OPINION**
**(Granting Motion for Summary Judgment)**

Dennis James Brown, a Virginia inmate proceeding *pro se* and *in forma pauperis*,

filed this 42 U.S.C. § 1983 action.[1]  Brown's claims flow from the alleged

unconstitutional treatment Brown received from Lt. A. Banks and Dr. Inder Gujral in the

aftermath of Brown's hernia surgery.  Brown contends that:

Claim 1      (a)  Defendant Banks violated Brown's rights under the Eighth
             Amendment when, on February 10, 2015, he ordered Brown to move
             some heavy boxes and refused to allow anyone to assist Brown in
             moving the boxes.  (Compl. 6–7, ECF No. 1.)[2]
             (b)  Defendant Banks violated Brown's rights under the Eighth
             Amendment when he falsely charged Brown with disobeying a

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects,
> or causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned to Brown's submissions by the CM/ECF docketing
system.  The Court corrects the capitalization and spelling the quotations from Brown's
submissions.

direct order and had Brown locked in segregation for thirty-six (36) days. (*Id.* at 6.)

Claim 2      Defendant Gujral failed to provide Brown with adequate medical care following Brown's injury on February 10, 2015. (*Id.* at 4.)

By a separate Memorandum Opinion, the Court dismissed Claims 1(a) and 1(b) against Defendant Banks. The matter is before the Court on the Motions for Summary Judgment filed by Brown (ECF Nos. 30, 48) and Motion for Summary Judgment filed by Dr. Gujral (ECF No. 43). For the reasons set for below, Dr. Gujral's Motion for Summary Judgment will be granted and Brown's Motions for Summary Judgment will be denied.

Before turning to the facts established for purposes of summary judgment, it is appropriate to trace the evolution of Brown's claims against Dr. Gujral. In his Complaint, Brown asserted that following his reinjury of his hernia on February 10, 2015, until the end of November of 2015, "Doctor Gujral has not done anything to help me, or send me to any specialist to find out what damages was done on 2–10–15." (Compl. 4.) As reflected below, the evidence shows that is simply not true. On April 16, 2015, Dr. Gujral sent Brown to Dr. Diep at Southampton Surgical Associates for continuing pain related to his hernia. (Mem. Supp. Mot. Summ. J. Ex. 1, Ex. A "Medical Records" 31.) Dr. Diep concluded there was "no recurrent hernia at this time" and "his chronic pain will likely improve over the next few months." (*Id.* at 32.) When Brown continued to complain of pain, Dr. Gujral ordered multiple kidney, ureter, and bladder x-rays, ordered multiple abdominal and pelvic CT scans, prescribed pain medication, and secured an additional surgical consultation.

2

Given the lack of merit of his initial claim, Brown's claim has now evolved to where he insists that Dr. Gujral violated his rights under the Eighth Amendment because he failed to provide Brown with adequate pain medication and inordinately delayed in requesting a follow-up examination with Brown's surgeon. Accordingly, the Court deems Brown to raise the following claims:

Claim 2    Defendant Gujral failed to provide Brown with adequate medical care following Brown's injury on February 10, 2015 by:
(a) failing to send Brown to a specialist;
(b) failing to promptly arrange a follow-up appointment with the surgical group that performed Brown's hernia surgery (Pl.'s Mem. Supp. Mot. Summ. J. 2–3, ECF No. 49); and,
(c) failing to provide adequate pain medication (*see, e.g., id.*)

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

In support of his Motion for Summary Judgment, Defendant Gujral submitted his own declaration (Mem. Supp. Mot. Summ. J. Ex. 1 ("Gujral Decl.," ECF No. 44–1), and a copy of Brown's medical records (Gujral Aff. Ex. A ("Medical Records").[3] Brown responded to the Motion for Summary Judgment. In considering the propriety of summary judgment, the Court will consider the sworn statements Brown tendered in support of his Motions for Summary Judgment (ECF No. 30–2, "Brown Aff."; ECF No. 46, "Brown Decl."). Of course, the facts offered by affidavit or sworn declaration must also be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).

---

[3] The Court employs the pagination assigned to the Medical Records by the CM/ECF docketing system.

Brown has submitted a number of conclusory statements that run afoul of this prohibition. For example, in his Affidavit, Brown swears that:

> Between February 11, 2015, and October 26, 2015 . . . , I repeatedly informed Dr. Gujral and his staff that I was experiencing extreme pain in the area of my surgery . . . . I requested pain-relieving medication to relieve my pain and suffering. Throughout that entire period of time, Defendant Dr. Gujral and his staff disregarded all of my pleas and requests for treatment.

(Brown Aff. ¶ 6, ECF No. 30–2.) Vague statements of this ilk fail to create material disputes of fact. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (observing that "[a]iry generalities" and "conclusory assertions" cannot "stave off summary judgment") (alteration in original) (internal quotation marks omitted) (citation omitted).

In light of the foregoing submissions and principles, the facts set forth in the next section are established for purposes of Dr. Gujral's Motion for Summary Judgment.

## II. FACTS PERTINENT TO SUMMARY JUDGMENT

In January of 2015, Brown was confined in Sussex II State Prison ("SIISP"). (Brown Decl. ¶ 5.) On January 27, 2015, Brown underwent surgery for a right inguinal hernia. (Gujral Decl. ¶ 5.) The surgery was conducted at Southampton Memorial Hospital. (*Id.*) The surgeon repaired the hernia with "plug and mesh." (*Id.*) The surgical consultation report recommended that Brown not perform any heavy lifting or strenuous activity for three weeks. (*Id.* ¶ 6.) The consultation report further recommended a follow-up appointment in the surgical clinic in three weeks. (Medical Records 20.)

On February 5, 2015, Dr. Gujral examined Brown in a follow-up appointment in light of Brown's hernia repair surgery. (Gujral Decl. ¶ 7.) Dr. Gujral noted that Brown's "wound was healing well, there was no redness and no drainage found. [Dr. Gujral] found that [Brown] had good bowel sounds present." (*Id.*) Dr. Gujral informed Brown that he could be discharged from the infirmary. (*Id.*) Dr. Gujral ordered that Brown not "engage in any heavy lifting, sports, or strenuous activity for three weeks, and that he be given a bottom bunk for six weeks. [Dr. Gujral] requested that [Brown] be seen in follow[-]up in the Surgery Clinic in three weeks." (*Id.*)

On February 10, 2015, despite Brown's protestations that it was against his surgeon's orders, Defendant Banks demanded that Brown lift several heavy boxes. (Brown Decl. ¶ 7.) On February 11, 2015, the nursing staff examined Brown in the segregation unit and noted that his vital signs were stable and Brown did not have any signs of physical injury and voiced no complaints. (Gujral Decl. ¶ 8.) The nursing staff recommended, and Dr. Gujral "signed off on the recommendation, that [Brown's] lifting restrictions be extended for two additional weeks and that [Brown] should apply a warm compress to the wound site for fifteen minutes two times a day." (*Id.*)

On February 19, 2015, Brown had a follow-up visit with respect to his surgery, but it is unclear from the record who examined Brown or where he was examined. (Medical Records 25; Gujral Decl. ¶ 9.)

On February 24, 2015, the nursing staff examined Brown for his complaints of possible hernia re-injury a week prior. (Gujral Decl. ¶ 10.) In the history section of the sick-call note, Brown stated he may have reinjured himself by lifting his mattress. (*Id.*)

6

"Upon examination, the nurse found that [Brown] was alert, there were no signs of distress noted, there was tenderness found at the surgical incision site, but there was no drainage found. The nurse recommended that [Brown] be placed on the physician's list to be evaluated." (*Id.*)

On March 5, 2015, Dr. Gujral evaluated Brown for his complaints of reinjuring his hernia and constipation. (*Id.* ¶ 13.) During that visit, Brown "claimed to have linear discomfort in his right groin area after picking up an object. [Dr. Gujral] noted that [Brown] was otherwise doing well [and] found that [Brown] was healing well with respect to his hernia repair . . . ." (*Id.*) Dr. Gujral told Brown to "refrain from lifting greater than ten pounds for twelve weeks." (*Id.*) Dr. Gujral's abdominal examination of Brown was "negative." (*Id.*) Dr. Gujral ordered Colace for Brown's complaints of constipation. (*Id.*) Dr. Gujral did not prescribe any pain medication. (Brown Decl. ¶ 12.)

On April 7, 2015, the nursing staff at SIISP examined Brown for his complaint of right side pain for which Brown requested x-rays. (Gujral Decl. ¶ 14.) The nursing staff noted that Brown "complained of shooting pain down his right side and had a history of hernia repair." (*Id.*) The nursing staff further noted that Brown was alert, oriented and not in distress. (*Id.*) Additionally, Brown "demonstrated a good range of motion," but "his abdomen was lightly rigid on the right side. The nurse recommended that [Brown] be referred to the physician for evaluation." (*Id.*)

On April 13, 2015, Dr. Gujral evaluated Brown "in follow[-]up for his hernia repair surgery and his complaints of right sided pain." (*Id.* ¶ 15.) Dr. Gujral noted that

Brown "continued to complain of pain on the right side of his abdomen, and the pain radiated to the right subcostal region." (*Id.*) Upon examination, Dr. Gujral found that Brown's

> wound was healed and there was no drainage or swelling present. [Brown's] abdomen was soft, non-tender and bowel sounds were present. [Dr. Gujral] explained to [Brown] that there was no acute problem or abnormal findings present. [Brown] stated that he wanted to go and see the physician who performed the surgery (Dr. Yancey). As such, a request for referral/consultation called a "UMD" was submitted for follow[-]up.

(*Id.*) On April 14, 2015, SIISP received approval to send Brown to Southampton Memorial Hospital for a follow-up appointment with general surgery. (*Id.* ¶ 16.)

On April 16, 2015, Dr. Diep at Southampton Surgical Associates evaluated Brown for his complaints of postoperative pain following his hernia surgery. (*Id.* ¶ 17.) Dr. Diep noted that Brown's "last visit was in February 2015 . . . ." (*Id.*) Brown told Dr. Diep that "he continues to have mild pain near the repair site. The pain extends towards the right ASIS and down towards the right side of the scrotum. He describes it as a pulling/burning type of pain. It is rated as 3/10." (*Id.* (punctuation corrected).) Dr. Diep noted that Brown was not in acute distress, the incision cite was completely healed, and that there

> were no signs of recurrence of hernia, and no infection noted. Dr. Diep explained to [Brown] that his chronic postoperative pain would likely improve over the next few months, and further explained to [Brown] that there was no recurrent hernia at that time. Dr. Diep instructed [Brown] to continue monitoring the area. [Brown] was informed that he could resume all of his normal activities and there were no restrictions. [Brown] was advised that if the pain persisted or worsened, he would need to follow[-]up with Dr. Yancey again for evaluation and management, at which time he may need to be referred to a pain clinic for injections.

(*Id.*)

8

On April 16, 2015, Brown returned to SIISP from Southampton Memorial Hospital. (*Id.* ¶ 18.) Although Brown did not voice any complaints at that time, Dr. Gujral prescribed 500mg of Tylenol twice a day for five days. (*Id.*) On April 20, 2015, Dr. Gujral examined Brown's chart and recommended that Brown continue to receive Tylenol as needed. (*Id.* ¶ 19.)

On May 14, 2015, the nursing staff at SIISP examined Brown for his "complaint of ongoing right sided pain that radiated down his right leg. [Brown] complained of tightness and shooting pains." (*Id.* ¶ 20.) Upon examining Brown, nursing staff noted that Brown was alert and not in acute distress and recommended that Brown be referred to the physician for evaluation. (*Id.*)

On May 19, 2015, Dr. Gujral evaluated Brown. (*Id.* ¶ 21.) Dr. Gujral noted that "there was tunnel sign on the right edge and after the scar on the outer side. No inflammation was noted, his skin was normal and his incision scar was healed. [Dr. Gujral] advised [Brown] to take Tylenol as needed and to follow[-]up in three months." (*Id.*)

Brown, however, asserts that he never received Tylenol at any time in 2015. (Brown Decl. ¶¶ 18, 20.) Brown further asserts that Dr. Gujral never advised him to take Tylenol as needed during the May 19, 2015 examination. (Brown Decl. ¶ 22.) Brown's medical records reflect that Brown was prescribed and administered Tylenol twice a day from April 18, 2015 until April 22, 2015. (Reply Ex. 1, ECF No. 50–1.)

On June 30, 2015, the nursing staff at SIISP again saw Brown for "his

complaints of lower right abdominal discomfort that had been ongoing since his hernia repair surgery." (Gujral Decl. ¶ 22). The nursing staff noted that Brown "had had numerous appointments for this issue, but [Brown] believed that something was wrong. Upon examination, [Brown] was noted to be alert, oriented and in no distress. No bulge or distension was noted, and his abdomen was soft. [Brown's] bowel movements were noted to be appropriate." (*Id.*) It was recommended that Brown be referred to the physician for evaluation. (*Id.*) Brown was prescribed and received Palemor pain medication between July 21 and July 31, 2015. (*Id.* ¶ 23.)

On July 13, 2015, Brown was scheduled to see the physician, but refused to attend the appointment and instead went to his programs. (*Id.* ¶ 24.)

On July 16, 2015, a physician at SIISP examined Brown for his complaints of abdominal discomfort. (*Id.* ¶ 25.)

> The physician noted that [Brown's] complaint of abdominal discomfort had been ongoing since his hernia repair, and [Brown] *had received two post-operative surgical follow[-]up appointments* at Southampton Memorial Hospital. Upon evaluation by the physician at SIISP, [Brown] complained of some discomfort in his right flank going into his right testicle for which he was concerned, but the physician found that [Brown] did not otherwise appear ill. The physician recommended that [Brown] receive[] a kidney, ureter and bladder x-ray ("KUB").

(*Id.* (emphasis added).)

On July 16, 2015, Brown received a KUB which revealed: "'1. Oval calcification within the right pelvis is suspicious for a stone within the distal ureter and less likely favored to be a pelvic phlebolith (due to shape and location). 2. Nonobstructive bowel gas pattern.'" (*Id.* ¶ 26.) On July 23, 2015, a physician at SIISP reviewed the results of

Brown's KUB and ordered that Brown "receive Ibuprofen 600mg three times a day for twenty one days, Flomax 0.4 mg once a day in the evenings for sixty days, Cipro 750mg twice a day for fourteen days, and a follow[-]up with the physician." (*Id.* ¶ 27.) Additionally, Brown "received the pain medication Pamelor throughout August of 2015." (*Id.* ¶ 28.)

On August 3, 2015, Dr. Gujral evaluated Brown in a follow-up appointment with respect to his KUB. (*Id.* ¶ 29.) Brown told Dr. Gujral "that the mesh placed during the surgery had . . . slipped." (*Id.*) Dr. Gujral noted that Brown had no urinary problems, no obstructive bowel pattern, and his x-ray showed a possible right uretic stone. (*Id.*) Dr. Gujral requested a repeat KUB to confirm the presence of a questionable uretic stone and directed that Brown follow[-]up after his KUB report was received. (*Id.*) Dr. Gujral prescribed Metamucil for Brown for thirty days and requested that a urine analysis be performed. (*Id.*)

On August 4, 2015, Brown received another KUB. The KUB revealed: "'1. 5mm calcification in the pelvis on the right. This and [sic] may be within the course of the distal right ureter. 2. No definite renal, left ureteral or bladder calculi.'" (*Id.* ¶ 30 (alteration in original).)

On August 17, 2015, Dr. Gujral evaluated Brown in a follow-up after his KUB x-ray. (*Id.* ¶ 31.) Dr. Gujral noted that the KUB "revealed a 5mm calcification on the right side and questionable uretic stone. [Dr. Gujral] documented that there was 'no pain' at that time [and] recommended that [Brown] undergo another urine analysis and to follow up after two weeks." (*Id.*)

On October 2, 2015, Brown was at work during normal sick-call, so he was placed on the master pass list. (*Id.* ¶ 34.)

Brown received the pain medication Pamelor from September through December of 2015. (*Id.* ¶¶ 32–33, 36, 46.) On October 26, 2015, Dr. Gujral renewed Brown's prescription for Flomax .4mg. (*Id.* ¶ 35.)

On November 2, 2015, the nursing staff at SIISP evaluated Brown

for his complaints of hernia repair complications. Specifically, [Brown] presented with complaints of pain and pulling in the right abdominal quadrant. The nurse noted that [Brown] was seen by a specialist a few months ago. Upon examination, [Brown] was noted to be in no acute distress, bowel sounds were present in all four quadrants, and his abdomen was soft and non-tender. [Brown] described his pain as sharp and constant with a pulling feeling in the right upper quadrant and right lower quadrant. The nurse recommended that [Brown] be referred to the physician for follow[-]up.

(*Id.* ¶ 37.) On November 9, 2015, Dr. Gujral examined Brown for his complaints of continued pain in the groin and lower abdomen. (*Id.* ¶ 38.) Dr. Gujral noted that Brown had a healed scar in the inguinal area and "tenderness in the right lower quadrant and gluteal region of the abdomen." (*Id.*) Dr. Gujral directed Brown to follow up with the surgeon who conducted the surgery and submitted a UMD wherein he "recommended that a CBC, CMP, and lipids sedate be performed." (*Id.*)

On November 9, 2015, Dr. Gujral submitted a request to Armor Correctional Health Services, Inc. for a follow[-]up appointment with general surgery at Southampton Memorial Hospital for Brown. (*Id.* ¶ 39.) "On November 10, 2015, SIISP received approval for the UMD appointment with the general surgeon at Southampton Memorial

Hospital." (*Id.* ¶ 40.) Brown was scheduled for a surgery consultation on November 19, 2015. (*Id.* ¶ 41.)

Following his examination of Brown, the physician at Southampton Memorial Hospital found "mild tenderness to palpation, rt. [right] extension oblique no deficit, wound site well healed." (*Id.* ¶ 42.) The consulting physician recommended that Brown apply a warm compress to the wound cite "for fifteen minutes daily for five days, and further recommended that an abdominal and pelvic CT with oral contrast be performed for the diagnosis of abdominal wall pain." (*Id.*) The consulting physician further restricted Brown from engaging in strenuous activity. (*Id.*)

On November 23, 2015, Dr. Gujral evaluated Brown for his complaints of continued pain at the hernia site. (*Id.* ¶ 43.) Dr. Gujral noted that Brown "had a CT of the abdomen done with contrast on November 19, 2015 while at Southampton Memorial Hospital, but the results were not yet available. [Dr. Gujral] advised [Brown] that he undergo an abdominal and pelvic CT as recommended by general surgery at Southampton Memorial Hospital." (*Id.*)

On November 23, 2015, Dr. Gujral submitted an Armor Correctional Health Services, Inc. consultation request for an abdominal and pelvic CT. (*Id.* ¶ 44.) "On November 24, 2015, SIISP received approval for the recommended abdominal and pelvic CT, and an appointment was made for [Brown] to receive this imaging on December 2, 2015 at Southampton Memorial Hospital." (*Id.* ¶ 45.)

On November 30, 2015, the mailroom at SIISP received Brown's Complaint. (ECF No. 1–2.)

On December 2, 2015, Brown received an abdominal and pelvic CT with contrast at Southampton Memorial Hospital, which resulted in the following findings:

> Inferior Thorax: Small hiatal hernia with mild contrast in the distal esophagus. No acute pathology. Borderline cardiomegaly. Liver and Spleen: Normal size and contrast enhancement. No focal lesion. No intra or extrahepatic biliary distension. Pancreas: Normal. Adrenals: Normal. Gallbladder: Normal. Kidneys: Normal size and contour. No focal calcification, lesion, or hydronephrosis. Normal ureters. Bowel and mesentery: No acute pathology. No obstruction or free air. No free or localized peritoneal fluid or inflammation. Mild to moderate stool retention. Scarring in the right inguinal canal from previous surgery. Normal appendix. No hernia. Bladder: Normal. Pelvic Organs: Mild to moderate prostate enlargement to be correlated with PSA. Lymphatics: No pathologic adenopathy. Vessels: Mild atherosclerotic calcification of the aorta, iliac, left femoral arteries. No aneurysm. Bones and soft tissues: No acute pathology. Moderate L3-4 and mild L4-5 degenerative disc disease with mild lumbar spondylosis. Small cyst in the right acetabulum.

(Gujral Decl. ¶ 48.) Brown was returned to SIISP that day. (*Id.* ¶ 49.) On December 21, 2015, Dr. Gujral noted that Brown had received an abdominal and pelvic CT on December 2, 2015 that was normal except for scarring in the right inguinal canal. (*Id.* ¶ 50.) On January 7, 2016, Brown was transferred from SIISP to Greensville Correctional Center. (*Id.* ¶ 51.)

### III. ANALYSIS

To survive a motion for summary judgment on an Eighth Amendment claim, Brown must demonstrate that Dr. Gujral acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### A.     Failure to Send Brown to a Specialist

As noted above, Brown's assertion that Dr. Gujral failed to send him to any specialist to ascertain the cause of his pain is refuted by the record. When Brown continued to complain of pain, Dr. Gujral ordered multiple kidney, ureter, and bladder x-rays, ordered multiple abdominal and pelvic CT scans, prescribed pain medication, and secured an additional surgical consultation. Accordingly, Claim 2(a) will be dismissed.

### B.     Delay in Sending Brown Back for a Follow-Up with the Surgical Group

In Claim 2(b), Brown faults Dr. Gujral for failing to ensure that Brown was returned to the surgical clinic at Southampton Regional Hospital within three weeks of his surgery on January 27, 2015. (Brown Decl. ¶¶ 5–6.) When, as here, the inmate raises a complaint pertaining to the delay in medical care, he must also establish that the delay in the provision of medical care "'resulted in substantial harm.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *id.* at 754 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000);

*see Webb v. Hamidullah*, 281 F. App'x 159, 166–67 n.13 (4th Cir. 2008) (explaining that where an Eighth Amendment claim is predicated on a delay in the provision of medical care, the plaintiff must demonstrate "'that the delay resulted in substantial harm.'" (quoting *Sealock*, 218 F.3d at 1210)). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citations omitted); *see Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987)). As explained below, Brown fails to demonstrate that the delay in returning him to the surgical clinic resulted in substantial harm.

Brown had surgery on January 27, 2015. Three weeks from that date would be February 17, 2015. Brown, however, was not returned to Dr. Diep at Southampton Surgical Associates until April 16, 2015. (Medical Records 32.) Although Brown experienced some pain during this period, the record fails to indicate that the pain was attributable to any delay in conducting the follow-up appointment. Instead, Dr. Diep concluded there was "no recurrent hernia at this time" and that Brown's "chronic pain will likely improve over the next few months." (*Id.*) Dr. Diep did not indicate that Brown required pain medication. Accordingly, Claim 2(b) will be dismissed.

Additionally, the record indicates that any delay in returning Brown to Southampton Memorial Hospital for a follow-up appointment with respect to his surgery is attributable to some confusion with respect to Brown's medical records rather than Dr. Gujral's indifference.  When Brown returned to SIISP following his initial surgery, Dr.

17

Gujral promptly "requested that [Brown] be seen in follow[-]up in the Surgery Clinic in three weeks." (Gujral Decl. ¶ 7.) Brown's medical records indicate he had a follow-up visit with respect to his surgery on February 19, 2015. (Medical Records 25.) On April 16, 2015, when Dr. Diep at Southampton Surgical Associates evaluated Brown for his complaints of postoperative pain, Dr. Diep also noted that Brown's "last visit was in February 2015 . . . ." (*Id.* at 32.)[4] Thus, to the extent that Brown failed to receive a follow-up appointment with respect to his surgery in February of 2015, such an omission is attributable to confusion in Brown's medical records, instead of deliberate indifference on the part of Dr. Gujral.

### C.    Alleged Failure to Provide Adequate Pain Medication

Pain medication may adversely impact an inmate's recovery from surgical treatment. Thus, "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Brown demonstrates no extreme circumstances here. *See, e.g., Martinez v. Mancusi*, 443 F.2d 921, 923–25 (2d Cir. 1970) (granting relief when prison doctor prematurely forced prisoner plaintiff, without hospital ordered pain medication, to walk out of the hospital and stand for meals after plaintiff had leg surgery for which hospital specialist had ordered plaintiff to lie flat and not to walk).

---

[4] Indeed, another physician at SIISP also confirmed upon examining Brown and his medical records that, as of July of 2015, Brown "had received two post-operative surgical follow-up appointments at Southampton Memorial Hospital." (Gujral Decl. ¶ 25.) This notation supports the inference that Brown's medical records reflected that Brown had received a post-operative surgical follow-up appointment in February.

Following Brown's surgery, Dr. Gujral did not prescribe any pain medication until April 16, 2015. Brown, however, fails to demonstrate that this omission constitutes deliberate indifference. In assessing a claim of deliberate indifference, the Court also must consider the totality of medical care provided, rather than simply the additional treatment the inmate was denied. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (citing *Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999)). During this period, Brown was regularly examined by Dr. Gujral and other medical staff. Brown was observed to be recovering well from his surgery. Dr. Gujral prescribed medication to treat Brown's constipation, and when Brown's complaints of discomfort persisted, Dr. Gujral referred Brown back to the surgical group that performed the surgery. Given these circumstances, Brown fails to demonstrate Dr. Gujral acted with deliberate indifference by failing to prescribe pain medication during this initial period after surgery.

After Brown's follow-up appointment with the surgical group, Dr. Gujral swears that he prescribed Tylenol to treat Brown's discomfort. Brown denies receiving any Tylenol. This dispute fails to preclude summary judgment as Brown fails to demonstrate that his discomfort was sufficient to support an Eighth Amendment claim or that Dr. Gujral acted with deliberate indifference.

Brown described his pain to Dr. Diep as "mild" and rated it "as 3/10." (Gujral Decl. ¶ 17.) Dr. Diep further predicted that the pain would go away of its own accord. (*Id.*) Upon his return to SIISP following his appointment with Dr. Diep, Brown did not voice any complaints to Dr. Gujral. Given these circumstances, the failure to prescribe

19

any pain medication would not satisfy the objective prong of an Eighth Amendment claim.

Nevertheless, Dr. Gujral swears that he did prescribe Tylenol for Brown. Although Brown denies receiving the Tylenol, Brown fails to demonstrate that Dr. Gujral was aware that Brown was not receiving the Tylenol, in that Brown's medical records reflected that Brown was receiving the Tylenol. Thus, Brown fails to demonstrate that Dr. Gujral was actually aware that Brown faced a substantial risk of serious harm from the lack of pain medication. *See Farmer*, 511 U.S. at 837.

Beginning in July of 2015 and regularly thereafter, Dr. Gujral prescribed Pamelor to treat Brown's pain. Dr. Gujral also ordered multiple procedures and consultations to discover and alleviate the source of Brown's discomfort. Given these circumstances, Brown fails to demonstrate that Dr. Gujral acted with deliberate indifference by not ordering some other pain reliever for Brown. *See Diaz v. Turner*, 160 F. App'x 360, 362–63 (5th Cir. 2005) (finding inmate's disagreement with decision by medical personnel not to provide him with nonprescription medication on demand fails to constitute deliberate indifference to medical needs); *Reyes v. Gardener*, 93 F. App'x 283, 285 (2d Cir. 2004) (concluding defendants' decision to prescribe Tylenol or Motrin to manage prisoner's pain and to administer Demerol or Morphine only when necessary did not constitute deliberate indifference). "It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain."

20

*Snipes*, 95 F.3d at 592.  As Brown has failed to demonstrate that Dr. Gujral acted with deliberate indifference to his pain, Claim 2(c) will be dismissed.

## IV.  CONCLUSION

Dr. Gujral's Motion for Summary Judgment (ECF No. 43) will be granted.  Claim 2(a) through 2(c) will be dismissed.[5]  Brown's Motions for Summary Judgment (ECF Nos. 30, 48) will be denied.  The action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

                                          _____ /s/ _____
                                          HENRY E. HUDSON
Date: Jan 31 2017                         UNITED STATES DISTRICT JUDGE
Richmond, Virginia

---

[5] Given the preliminary dismissal of Brown's federal claims, any claims for relief based on state law will be dismissed without prejudice.

21